In the Matter of Robert A. SCHALLER and Irene A. Schaller, Debtors.

Bankruptcy No. LM11–81–01737.
Civ. A. No. 82–C–196–C.

United States District Court,
W.D. Wisconsin.

Feb. 16, 1983.

James Hublou, Madison, Wis., for debtors.

Roger L. Imes, La Crosse, Wis., for creditor Northwestern Nat. Life Ins. Co.

CRABB, Chief Judge.

This case is before the court on the debtors' appeal from an order entered on February 4, 1982 in the United States Bankruptcy Court for the Western District of Wisconsin. The order granted Northwestern National Life Insurance Company's request for relief from the automatic stay of proceedings against the debtors, pursuant to 11 U.S.C. § 362(d). For the reasons discussed below, the order appealed from is affirmed.

The record in this case discloses the following: Northwestern held a promissory note in the amount of $1,500,000 signed by the appellants on July 8, 1976, which was secured by a mortgage on four parcels of property in LaCrosse County, Wisconsin. The four parcels are a medical clinic, a laundry, a mall, and an entertainment facility called The Golden Palace. Because of the debtors' nonpayment of the note, mortgage foreclosure proceedings were begun in 1980, a judgment of foreclosure was granted in state proceedings, and a receiver was appointed. Northwestern made the high bid for the parcels at a sheriff's sale and was awarded the property in September, 1980, subject to confirmation of the sale by the state circuit court. In October, 1981, the appellants filed their petition for reorganization, resulting in an automatic stay of the state foreclosure proceedings. On November 9, 1981, Northwestern requested relief from the stay.

### Bankruptcy Court's Findings of Fact

In his January 27, 1982, oral decision granting Northwestern's request, the bankruptcy judge made the following findings of fact: that the value of the clinic was $110,000; of the laundry, $60,000; of the mall, $880,000; and of The Golden Palace, $1,000,000, for a total collateral value of $2,050,000; that these values were fairly stable, in that adequate insurance was provided and neither substantial physical nor economic depreciation or appreciation had been shown; that the principal due Northwestern on the date of filing was $1,444,676.52, with interest due in the amount of $290,493.50 as of December 29, 1981, and interest accruing since the date of filing at the rate of $385 per day; that the "cushion," or difference between the value of the property and the amount of the debt, was seventeen to eighteen percent; and that as long as interest was not being paid, the cushion was being continuously eroded by the increasing amount of the debt as further interest became due. The bankruptcy judge also found, with respect to the alternate proposals for Northwestern's protection which were made by appellants,[1] that the property which appellants proposed to sell had no proven value and that there had been no proposed manner or date of sale; that there had been no showing that excess farm income would be available, and that an assignment of such income would be terminable at will by appellants; and that there had been no showing of ways in which managing the four properties involved here would generate significant profits in the short term.

---

1. The record shows that appellants made a proposal to sell the four properties involved here as well as their unsecured real estate; to be debtors-in-possession of the four properties and manage them, with profits going in part to Northwestern; to assign certain income from appellants' farming operations; and to deliver to Northwestern mortgages on appellants' farm property and unsecured real estate as security. This plan was to be accomplished within six months, or, at the end of that time, the stay would be lifted.

## OPINION

In reviewing these findings of fact, I am required to

accept the referee's findings of fact unless they are clearly erroneous, and . . . give due regard to the opportunity of the referee to judge the credibility of the witnesses.

Rule 810, Rules of Bankruptcy Procedure; *see also* Rule 8001, Interim Bankruptcy Rules. I find that the findings of fact in this case were not clearly erroneous.

■ I first turn to the bankruptcy court's valuation figures. The value of the clinic was based on an offer to purchase, the value of the laundry was arrived at by rounding off appraisals presented for the property, and the value of the mall represents a midpoint between divergent appraisals. The bankruptcy judge evaluated the totality of the evidence on the value of The Golden Palace and then arrived at his own approximation. All of these valuations were adequately based on evidence in the record.

The thrust of appellants' challenge to the values assigned by the judge seems to be that different weight and credibility should have been accorded to the various witnesses testifying about the values of the properties. Yet Rule 810 serves as a reminder that the issue of the credibility of witnesses is peculiarly within the province of the bankruptcy court. Different results certainly were possible (for instance, by relying on offer of exchange figures for the clinic and laundry), given the inexact nature of valuation, *see, e.g., In re Savloff,* 4 B.R. 285, 286 (Bkrtcy.E.D.Pa.1980), yet it cannot be said that the bankruptcy judge's valuations were clearly erroneous.

■ The amount of principal and interest due to Northwestern is documented in the record. Appellants' objection to the cushion figure of seventeen and eighteen percent appears to be premised on their contention that the mortgaged property was valued incorrectly; that contention has already been addressed. That the cushion is being eroded by virtue of increasing interest indebtedness follows logically and is not contested by appellants, although they deny that that erosion is determinative of the issue of whether Northwestern is adequately protected. This legal conclusion will be discussed below.

■ The bankruptcy judge's conclusions as to the uncertainty of the outcome of appellants' alternative proposals were also not clearly erroneous in light of the record.

■ In evaluating the bankruptcy judge's legal conclusions, the clearly erroneous standard does not apply; rather, I must make an independent finding as to questions of law arising on appeal from the bankruptcy court. *Stafos v. Jarvis,* 477 F.2d 369 (10th Cir.), *cert. denied* 414 U.S. 944, 94 S.Ct. 230, 38 L.Ed.2d 168 (1973).

■ From the facts he had found, the bankruptcy judge was correct in concluding that Northwestern was entitled to relief under 11 U.S.C. § 362(d). That section states:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

It is clear from 11 U.S.C. § 362(g)(2) that the burden of proving that Northwestern was "adequately protected" under § 362(d)(1) rested on the appellants. That burden was not met.

Although the phrase "adequately protected" is not defined in the statute, some examples of types of protection are listed in § 361. The cushion analysis, as a method of evaluating the adequacy of the protection of a party's interest in property, is well established. *See, e.g., In re Rogers Devel-*

*opment Corp.*, 2 B.R. 679, 683 (Bkrtcy.E.D. Va.1980). In some cases, the cushion alone is adequate to guarantee a party will receive the "indubitable equivalent" of its interest in the property as permitted by 11 U.S.C. § 361(3). *See Collier On Bankruptcy* § 361.01[3]. The adequacy of a cushion amount must be evaluated on a case-by-case basis. *In re Tucker*, 5 B.R. 180, 183 (Bkrtcy.S.D.N.Y.1980). One element which will determine the adequacy of a cushion is the chance that the cushion will be rapidly dissipated. *In re Pitts*, 2 B.R. 476, 478–9 (Bkrtcy.C.D.Cal.1979). Whereas a cushion of seventeen to eighteen percent may in some circumstances offer adequate protection, *see, e.g., In re Rogers Development Corp.*, 2 B.R. 679, there is no doubt that in this case the cushion is being rapidly eroded by the large amount of interest becoming due each day. I therefore conclude that the cushion does not in itself offer Northwestern adequate protection.[2]

■ The bankruptcy judge's finding that the alternate proposals put forth by appellants are too speculative to guarantee Northwestern adequate protection of its interest in the property is a conclusion of law. From the bankruptcy judge's findings of fact as to appellants' alternative proposals, he was correct in concluding in this case that the results of appellants' offer to sell their property and to assign future farm income and future profits from the four properties were too uncertain to guarantee the "indubitable equivalent" of Northwestern's interest in these properties and thus to protect Northwestern adequately.

Since appellants did not show that either the cushion or their alternate proposals offered Northwestern adequate protection of its interest in the property, I conclude that Northwestern is entitled to the relief which it was granted.

Because I find that Northwestern was entitled to relief under 11 U.S.C. § 362(d)(1), I need not examine the bank-

ruptcy judge's findings of fact and conclusions of law under § 362(d)(2). Furthermore, although the February 4, 1982, order contains findings and conclusions under both sections, it is clear from the January 27, 1982 decision that the bankruptcy judge was basing his holding on § 362(d)(1).

### ORDER

IT IS ORDERED that the order of the bankruptcy court entered herein on February 4, 1982 is AFFIRMED.

---

**2.** Insofar as the opinion in *In re Alyucan Interstate Corp.*, 12 B.R. 803 (Bkrtcy.D.Ut.1981) suggests that relief from the stay should only be granted where the impairment in value is

attributable to the stay, it appears to go against the weight of case law and I do not choose to follow it.