In re 8TH STREET VILLAGE LIMITED PARTNERSHIP (debtor).

Appeals of 8TH STREET VILLAGE LIMITED PARTNERSHIP and Lyons Savings and Loan Association.

Nos. 88 C 5987, 88 C 5988.

United States District Court, N.D. Illinois, E.D.

Dec. 30, 1988.

## MEMORANDUM OPINION
## AND ORDER

HART, District Judge.

Debtor, 8th Street Village Limited Partnership ("8th Street Partnership"), and a creditor, Lyons Savings and Loan Association, have appealed from an order granting relief from the automatic stay. That order is final and appealable. *In re Boomgarden*, 780 F.2d 657, 659–60 (7th Cir.1985); *In re Cimarron Investors*, 848 F.2d 974, 975 (9th Cir.1988). Also, the appeal was timely taken.[1]

8th Street Partnership is an Illinois limited partnership that owns and operates a shopping center, theater, and office complex in downtown Boise, Idaho known as the 8th Street Marketplace. Beverly Hills Savings provided a secured loan for the property that, as of August 1987, had a 7.6 million dollar principal balance and about 812,000 dollars in unpaid interest and late charges. Lyons Savings' loan to debtor is junior to Beverly's loan. It is undisputed that the current value of 8th Street Marketplace is less than the principal balance of Beverly's loan. The partnership does

---

1. The order of the bankruptcy judge was entered on May 4, 1988. On May 18 (which is ten days under the Bankruptcy Rules, Bankr.R. 9006(a)), 8th Street Partnership timely moved for reconsideration pursuant to Bankr.R. 9023 which incorporates Fed.R.Civ.P. 59. This postponed the time for appeal. Bankr.R. 8002(b). The reconsideration motion was denied on May 24 and that order was entered May 26. The time to file an appeal was ten days from May 26, Bankr.R. 8002(a), which, after excluding Memorial Day, was June 10. The time for appealing can be extended up to 20 additional days.

Bankr.R. 8002(c). On June 7, the bankruptcy judge extended the time for appealing to June 28 and the appellants timely filed their appeal that day. The appellants, on May 31, sought reconsideration of the May 24 order. The successive reconsideration motion did not extend the time for appealing from the May 4 order. *See Charles v. Daley*, 799 F.2d 343, 347 (7th Cir.1986). The second reconsideration motion was denied on June 28 and that order was entered July 1. That order was timely appealed on July 6.

not own any other property. 8th Street Partnership filed a petition under Chapter 11 of the Bankruptcy Code. Pursuant to 11 U.S.C. § 362(d)(2), the bankruptcy court granted Beverly's motion to lift the automatic stay. *In re 8th Street Village Limited Partnership*, 88 B.R. 853 (Bankr.N.D. Ill.1988). Foreclosure proceedings were begun, but consummation of those proceedings apparently has been voluntarily postponed pending resolution of this appeal.

Section 362(d)(2) provides that the automatic stay of § 362(a) can be terminated, annulled, modified, or conditioned with respect to a stay of an act against property if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." The parties agree (A) is satisfied. Appellants' dispute the bankruptcy court's finding that (B) is satisfied. The parties agree that appellants had the burden of proof as to (B). 11 U.S.C. § 362(g)(2); *Boomgarden*, 780 F.2d at 663. The findings of fact of the bankruptcy court must be accepted unless clearly erroneous while its conclusions of law are reviewed *de novo. Id.* at 660. The ultimate decision to lift the stay is reviewed for abuse of discretion. *Id.*

■ Appellants now argue, for the first time, that "necessary to an effective reorganization" means necessary for any possibility of reorganization. This is known as the "necessity" standard. *See In re National Real Estate Ltd. Partnership II*, 87 B.R. 986, 990 (Bankr.E.D.Wis.1988). Appellants concede this is the position taken by a minority of the courts that have considered the question. The majority of courts to consider the question have read that language as requiring

> not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." [*In re Timbers of Inwood Forest Associ-*

*ates, Ltd.*] 808 F.2d [363] at 370–371 [ (5th Cir.1987) ] and nn. 12–13, and cases cited therein.

*United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988) (emphasis in original). This is known as the "feasibility" standard. *National Real Estate*, 87 B.R. at 990. Appellants argue that this passage from the Supreme Court is *dictum* and therefore not binding on this court. Beverly argues appellants have waived this argument since not raised below, and that, in any event, the feasibility standard is the proper standard to apply.

Appellants did not raise the question of the necessity standard either prior to the bankruptcy court's May 4 decision or in seeking reconsideration of that decision. Moreover, 8th Street Partnership's own proposed findings of fact and conclusions of law proposed following the feasibility standard. *See* Bankruptcy Pleading 87, ¶ 10. Similarly, appellant's joint reply brief in support of the second reconsideration concedes *Timbers* is simply stating a well settled principle. *See* Bankruptcy Pleading 114 at 2. Beverly's proposed findings and conclusions apparently make the only reference to the necessity standard. *See* Bankruptcy Pleading 85 at 14 n. 7. The proposed conclusion was to reject the minority view in light of *Timbers* and other cases. The bankruptcy court did not refer to the necessity standard and simply followed the standard set forth in *Timbers.* Appellants argue that their argument for the necessity standard is preserved because the issue was raised by their opponent in its proposed conclusions. The court does not agree. Beverly argued for the feasibility standard and 8th Street Partnership conceded that was the proper standard. Therefore, the issue of the appropriate standard was never before the court. In its decision, the bankruptcy court only delineated the feasibility standard, it did not consider the possibility that an entirely different standard might apply. Therefore, appellants have waived any argument that the necessity standard should be applied.

■ Even if appellants had not waived the argument, this court would apply the feasibility standard. Although *Timbers* involved a question as to § 362(d)(1), the Court interpreted that statute in light of the statutory scheme. The Court's construction of § 362(d)(2) was necessary to its conclusion that undersecured creditors have a reasonable means of protection even in light of the Court's construction of "lack of adequate protection" under § 362(d)(1). But even if the discussion of § 362(d)(2) was *dictum,* that discussion of the Supreme Court should not be lightly ignored. Moreover, every appellate court that has considered the issue has held the feasibility standard is the proper standard to apply. *See In re Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363, 370–71 (5th Cir. 1987) (en banc), *aff'd,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *In re Ahlers,* 794 F.2d 388, 397–98 (8th Cir.1986), *rev'd on other grounds, Norwest Bank Worthington v. Ahlers,* — U.S. —, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *Grundy National Bank v. Tandem Mining Corp.,* 754 F.2d 1436, 1440 (4th Cir.1985); *In re Albany Partners, Ltd.,* 749 F.2d 670, 673 n. 7 (11th Cir.1984). Where the Seventh Circuit has not yet considered an issue, this court is to give substantial, but not absolute, deference to the decisions of other circuits. *Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1123 (7th Cir.1987). This court does not find any good reason to diverge from the circuit courts, and the majority of district and bankruptcy courts, even if *Timbers* should be considered nonbinding *dictum.* The plain language of the statute refers to an "effective" reorganization. The necessity standard reads the word effective out of § 362(d)(2). Also, it seems pointless and wasteful to deny a stay because of the relationship of certain property to a reorganization that will never occur,

which would be the result in any case where the necessity standard, but not the feasibility standard, would prevent relief from the automatic stay. Even if the word effective was not in the statute, a similar construction would result. A condition is not *necessary* to a result if that result will not occur even if the condition is satisfied— i.e. a piece of property is not necessary to a reorganization if a reorganization will not occur even if the property remains in the estate. The feasibility standard is the proper standard to apply.

■ Appellants challenge the factual findings of the bankruptcy court. They argue the court improperly rejected the testimony of Jeffrey Server[2] when there was no opposing evidence.[3] Server had extensive real estate experience, but was not admitted as an expert. The bankruptcy court rejected a number of Server's conclusions as to the financial future of 8th Street Marketplace.

Appellants misconstrue the bankruptcy court's findings. They primarily argue that the court took judicial notice of facts outside the record. But that is not what the court did. The court found Server's testimony to be internally inconsistent and to be based on unsound reasoning that could not be accepted. The trier of fact is not bound to follow the opinion of a witness, even if the witness, unlike Server, was qualified as an expert. *Dodge v. Stine,* 739 F.2d 1279, 1284 (7th Cir.1984). "The fact-finder ... should only give [the opinion] weight in inverse ratio to the amount of speculation and unfounded assumption it perceives to form a part of it." *Id. See also Fehrs v. United States,* 620 F.2d 255, 265, 223 Ct.Cl. 488 (1980) (per curiam); *Parents in Action on Special*

---

**2.** Consolidated Property Management, Inc., a Boise property management firm, handles the day to day operations of 8th Street Marketplace. Shell Properties/West provides additional supervisory management services such as marketing and lease negotiations. Server is the chief executive officer of Shell.

**3.** The bankruptcy court's decision was rendered pursuant to Bankr.R. 7041 which incorporates Fed.R.Civ.P. 41. Under Rule 41(b), the court, if acting as trier of fact, can determine facts and render judgment against the plaintiff at the close of its evidence. That is what happened in this case. Although 8th Street Partnership is not a plaintiff, it was the party with the burden of proof.

*Education v. Hannon,* 506 F.Supp. 831, 836 & n. 3 (N.D.Ill.1980).[4]

It was for the bankruptcy court to determine whether the testimony of Server was credible and based on sound reasoning. It was not clearly erroneous for the court to reject Server's conclusion that a competing mall outside downtown Boise would bring more business to 8th Street Marketplace instead of take business away from it. The court could also consider testimony as to a new office building and conclude—again contrary to Server's conclusion—that the new building would take business away from the Marketplace. The court considered testimony as to a convention center being constructed and determined there was insufficient evidence that construction would begin in the near future. On reconsideration, 8th Street Partnership provided evidence that construction had actually begun shortly after the court hearing. This, however, did not affect the decision of the court since the court had already concluded that, even if a convention center was built, it would not significantly improve debtor's financial situation. Finally, it was well within the court's discretion to find Server's testimony insufficient to show that Boise's economy could be expected to prosper for the foreseeable future. None of the findings of the bankruptcy court were clearly erroneous.

The only question that remains is whether, in light of the facts found by the bankruptcy court, the court abused its discretion in lifting the automatic stay. Appellants argue that the bankruptcy court improperly considered only the plans proposed by the parties (instead of any feasibly possible plan) and that the court improperly conducted a "mini-confirmation hearing."

The burden was on those opposing the lifting of the stay to show that there was a reasonable possibility of a successful reorganization within a reasonable time. *Timbers,* 108 S.Ct. at 632; *National Real Estate,* 87 B.R. at 990. As can—and probably should—be expected, the bankruptcy court's analysis focused on the plan actually proposed by the parties. Contrary to appellants' argument, though, the court concluded not only that the proposed plan was unfeasible, but also that there was no reasonable possibility of an effective plan. 88 B.R. at 860. Appellants have not pointed to any reasonable basis for an effective reorganization that takes into consideration the court's rejection of Server's projections. Moreover, appellants have not pointed to any reasonable means of preserving Beverly's present collateral plus market rate interest over the time period of a possible plan. Absent satisfying that requirement, no plan could be approved. *National Real Estate,* 87 B.R. at 991. In light of the court's findings of a dismal financial outlook for the Marketplace, satisfying that requirement is not feasible. As the bankruptcy court repeatedly points out, 8th Street Partnership's partners and other creditors cannot force Beverly to accept a reorganization that would put all the risk on Beverly and confer any possible benefits on the partners and other creditors. *See id.* at 990–91. Obviously, a plan could be devised that would confer potential benefits on Beverly, but, in light of the dismal financial expectations, there is no such plan that has a reasonable possibility of being

---

4. The cases relied on by appellants in their reply brief, *see Gober v. Matthews,* 574 F.2d 772 (3d Cir.1978); *Ware v. Director, Office of Workers' Compensation Programs,* 814 F.2d 514 (8th Cir. 1987), are inapposite. Those cases involve substantial evidence review of determinations of administration law judges in proceedings governed by particular statutes and regulations and different review standards. Moreover, even in those types of cases, expert medical opinions are only to be followed if based on a "reasoned medical judgment." *Arch Mineral Corp. v. Director, Office of Workers' Compensation Programs,* 798 F.2d 215, 222 (7th Cir.1986). Furthermore, those cases involve expert medical opinions. Unequivocal, uncontradicted, unimpeached testimony on a technical matter generally beyond the competence of lay determination should not be lightly disregarded, *United States v. Larkins,* 657 F.Supp. 76, 82 (W.D.Ky. 1987), *aff'd,* 852 F.2d 189 (6th Cir.1988), but even such evidence is not conclusive on the trier of fact and can be rejected as unsound, *Hannon,* 506 F.Supp. at 836 n. 3. Server's testimony, though, was not expert testimony nor technical and was readily comprehensible by the trier of fact.

successfully completed. Also, there is no evidence that the partners or someone else are willing to contribute or place at risk additional funds. The bankruptcy court was not clearly erroneous in finding that debtor failed to satisfy its burden of proving there was a reasonable possibility of an effective plan. There being no feasible plan, the bankruptcy court did not abuse its discretion in lifting the stay.

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to enter a judgment affirming the order of the bankruptcy court lifting the automatic stay applicable to Beverly Hills Savings.